IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TRACY PINKNEY,**

        **Petitioner,**

**v.**                                                           **Civil Action No. 1:07cv132**
                                                                           **(Judge Keeley)**

**UNITED STATES DEPT. OF JUSTICE,**

        **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

The above styled case is before the undersigned for consideration of the *pro se* petitioner's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, the government's Motion to Dismiss, and the petitioner's response. Also before the Court at this time, is the Petitioner's Motion for Summary Judgment, the respondent's response, and the petitioner's renewed Motion for Summary Judgment.

### I. Factual and Procedural History

**A. Petitioners' Disciplinary Proceedings**

On November 1, 2006, the petitioner received a disciplinary report in which he was charged with a violation of prohibited act code 312/404, Insolence Towards a Staff Member/Using Abusive or Obscene Language. See Resp't Ex. 1 at Att B. During the investigation of the charges, the petitioner did not request witnesses. Id. at Part III, Section 25. The investigator found the report factual and the charges were referred to a Unit Disciplinary Committee ("UDC") for further

proceedings.[1]  Id.

The petitioner's UDC hearing was held on November 6, 2006.  Id. at Part II.  At his UDC hearing, the petitioner admitted that the report was true.  Id. at Part II, Section 17.  Based on the investigation report and the petitioner's admission, the petitioner was found to have committed the prohibited act.  Id. at Section 18A.  The petitioner was sanctioned to loss of telephone privileges for 60 days.  Id. at Section 20.  The charges were not referred to a Disciplinary Hearing Officer ("DHO").[2]

## II.  The Pleadings

### A.  The Petition

In the petition, the petitioner asserts that on November 1, 2006, he was called to his counselor/unit manager's office regarding an informal administrative remedy the petitioner had filed against the counselor.  When the petitioner and his counselor were unable to resolve the issue, the petitioner asserts that his counselor became upset.  The petitioner then requested a formal administrative remedy form to file his complaint with the Warden.  At this time, the petitioner's unit manager, who was also in the room, told the petitioner he wanted to speak to him about a CD ROM that petitioner's counsel had sent him and advised the petitioner to step out of the office.

While waiting outside the unit manager's office, the petitioner's counselor came out and

---

[1] Pursuant to 28 C.F.R. §§ 541.2 and 541.15, a Unit Disciplinary Committee consists of one or more staff members who hold an initial hearing within 3 working days from the date staff became aware of an incident to determine whether the prohibited act, or a similar one, was committed, not committed, or whether further proceedings are needed.

[2] Pursuant to 28 C.F.R. §§ 541.2, a disciplinary Hearing Officer is an independent hearing officer who conducts disciplinary hearings referred for further action by the UDC and who imposes sanctions if a violation is found.

asked the petitioner several times if he wanted to listen to the CD ROM. The petitioner asserts that such repetitive questioning was done for the sole purpose of upsetting him. However, when the petitioner did not respond to the repeated questioning, his counselor allegedly stated: "You Mother F***ers always playing children games." The petitioner then responded by saying "you don't have the CD and f**k you too . . . and who are you talking to?"

At this point, the unit manager came out of the office and two individuals who were standing near by, walked away. It was this conduct for which the incident report was based. The petitioner asserts that the incident report was a direct result on his refusal to drop his administrative remedy against his counselor.

The petitioner also asserts that at the UDC hearing, he was not allowed to call witnesses. The petitioner further asserts that when he attempted to appeal the UDC findings in the BOP's administrative remedy process, he never received a response from the Warden. Because of the Warden's failure to respond, the petitioner asserts that he was unable to proceed through the other levels of the program. Thus, the petitioner asserts that his inability to exhaust his administrative remedies denied him access to the courts.

**B.   The Government's Response**

In its response, the government asserts that relief should be denied because the petitioner is not entitled to the due process protections required by Wolff v. McDonnell, 418 U.S. 539 (1974) at a UDC hearing and because he does not have a constitutional right to institutional grievances. Moreover, the government asserts that the petitioner did exhaust his administrative remedies and the BOP did not deny him access to the Courts.

**C.   The Petitioner's Opposition to the Respondent's Motion**

In response to the government's motion, the petitioner request that the Court deny the respondent's motion for the reasons set forth in his Motion for Summary Judgment.

**D.  The Petitioner's Motion for Summary Judgment**

In his motion for summary judgment, the petitioner asserts that he requested witnesses Steven Bell and Michael Shirley be called to testify on his behalf, but that his request was refused and he was found guilty of the charges without being allowed to defend himself.  Moreover, the petitioner again reiterates that his administrative appeals were unnecessarily delayed and hampered, thereby denying him access to the courts.  In addition, the petitioner asserts that he does have a constitutional right to appeal a UDC hearing.  Finally, the petitioner asserts that because any institutional infractions, no matter how small, can be considered in determining parole eligibility dates, and he is a D.C. inmate who is eligible for parole in August of 2019, he has a liberty in the outcome of his UDC hearing that may not otherwise be available to federal prisoners.  Thus, the petitioner requests summary judgment be granted in his favor.

**E.  The Government's Response to the Petitioner's Summary Judgment Motion**

In response to the petitioner's cross motion for summary judgment, the government reiterates its argument that the petitioner is not entitled to due process protections at a UDC hearing because there is no liberty interest at stake.

**F.  The Petitioner's Renewed Motion for Summary Judgment**

In his renewed motion for summary judgment, the petitioner asserts that the respondent violated his due process rights by deliberately impeding his access to the appeals process. Moreover, the petitioner asserts that the government has failed to properly respond to all of his allegations, and therefore, those allegations have been conceded.  Finally, the petitioner reasserts his belief that

because he is eligible for parole, he has a liberty interest in the outcome of his UDC hearing, which entitles him to the due process protections of Wolff.

### III. Analysis

The Federal Bureau of Prisons ("BOP") is charged with the responsibility of administering the federal prison system. See 18 U.S.C. § 4042. Included in this duty is the obligation to provide for the protection, instruction and *discipline* of all persons charged with or convicted of offenses against the United States. § 4042(a)(3) (emphasis added). Therefore, the BOP has promulgated rules for inmate discipline. See 28 C.F.R. § 541.10, et seq.

The procedural protections required at a UDC hearing are found at 28 C.F.R. § 541.15. For example, staff is required to give each inmate charged with violating a BOP rule, a written copy of the charges within 24 hours of the time staff became aware of the incident. § 541.15(a). In addition, a UDC hearing should ordinarily be held within three working days from the time staff became aware of the inmate's involvement. § 541.15(b). The inmate is entitled to be present at the UDC hearing, except during deliberations of the decisionmakers. § 541.15(c). Further, an inmate is entitled to make a statement and to present documentary evidence on his own behalf. § 541.15 (d). There is no requirement, however, that an inmate be entitled to present witnesses at a UDC hearing. § 541.15.

Moreover, the regulations limit the types of sanctions that may be imposed by a UDC hearing. Id. The UDC may only impose minor sanctions. § 541.15 (h). A violation of the rules that is either serious, or warrants more severe sanctions, must be referred to a DHO. Id.

In Wolff v. McDonnell, supra, the Supreme Court of the United States found that although prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights that are due a defendant in a criminal proceeding do not apply in prison disciplinary proceedings,

"there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution." Wolff at 556. Therefore, the Supreme Court found that an inmate was entitled to some due process protections during a DHO hearing. Id. Those protections include: written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety, and a written explanation of the evidence relied on and reasons for disciplinary action. Id. On the other hand, an inmate does not have a right to confrontation and cross-examination, or a right to counsel. Id at 567, 570. Disciplinary decisions comport with the requirements of procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder. Superintendent, Mass. Corr. Institution v. Hill, 472 U.S. 445, 117 S.Ct. 1584 (1985). The Supreme Court has not, however, extended such procedural due process protections to a UDC hearing where only the loss of minor privileges is at stake. See Wolff at 572, n.19 ("We do not suggest, however, that the procedures required by today's decision for the deprivation of good time [or imposition of disciplinary confinement] would also be required for the imposition of lesser penalties such as the *loss of privileges*.") (emphasis added).

In this case, the petitioner received only minor sanctions, 60 days loss of telephone privileges, for which he has no liberty interest. See Sandin v. Connor, 515 U.S. 472, 484 (1996) (liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). Thus, the Wolff procedural due process protections do not apply in this case. See Martin v. Foti, 561 F.Supp. 252 (E.D.La. 1983) (in order to qualify for due process

protection, the trier of fact must determine whether there is a liberty interest at stake, and if there is, what specific procedures are required to adequately protect such interest); O'Callaghan v. Anderson, 514 F.Supp. 765 (M.D.Pa. 1981) (an inmate has no liberty interest in calling witnesses at a UDC hearing); see also Price v. Johnson, 334 U.S. 266, 285 (1948) (lawful incarceration "brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system").

To the extent that the petitioner argues that he has a liberty interest in the outcome of a UDC hearing because of the potential affect a guilty finding could have on his future parole eligibility, that claim is without merit. See Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir. 1991) ("fear or hope about a future discretionary decision is too speculative" to create a liberty interest); see also Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979) (there is no liberty interest in parole).

Finally, to the extent that the petitioner argues that the BOP's processing of his administrative remedies violated his right to access the courts, or his right to due process, neither of those claims has merit. Even if the BOP unnecessarily or intentionally delayed its responses to the petitioner's administrative remedies, the petitioner can show no injury as a result. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (when alleging denial of access to the courts, "[a] showing of injury is required in order to avoid adjudication of trivial claims of deprivation"). The government does not assert a failure to exhaust in any of its motion or responses. To the contrary, the government concedes that the petitioner has exhausted his administrative remedies. See Memorandum (dckt. 16) at 6. Thus, there has been no denial of access to the courts.

Moreover, the petitioner has failed to show a loss of life, liberty or property. See U.S. Const.

Amend. V (a denial of due process under the Fifth Amendment requires a showing that the petitioner was deprived of life, liberty, or property). Clearly there is no loss of life or property involved in the petitioner's claim. Furthermore, and as discussed above, the petitioner cannot show that he was denied a liberty interest.[3]

### IV. Recommendation

For the foregoing reasons, the undersigned recommends that the respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (dckt. 15) be **GRANTED** and the petitioner's § 2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE**. Therefore, the undersigned further recommends that the petitioner's Motion for Summary Judgment (dckt. 20) and Renewed Motion for Summary Judgment (dckt. 22) be **DENIED**.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

---

[3] To the extent that the petitioner also argues that he has a constitutional right to participate in inmate grievance procedures, that claim is foreclosed by the Fourth Circuit's holding in Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994) (inmates do not have a constitutional right to participate in grievance proceedings).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt, to his last known address on the docket, and to counsel of record via electronic means.

DATED: August 22, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE