IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TRACY PINKNEY,

          Petitioner,

v.
                              Civil Action No.  1:07CV132
                                   (Judge Keeley)

UNITED STATES DEPARTMENT OF JUSTICE,
FEDERAL BUREAU OF PRISONS, and
JOE DRIVER, Warden,

          Respondents.


## ORDER ADOPTING REPORT AND RECOMMENDATION

### I. Procedural History

On August 1, 2007, pro se petitioner, Tracy Pinkney
("Pinkney"), filed a Petition for Writ of Habeas Corpus pursuant to
28 U.S.C. § 2241, requesting expungement of a disciplinary report
he received for violating the Bureau of Prison Prohibited Act Code
312/404, Insolence Towards a Staff Member/Using Abusive of Obscene
Language.   On April 23, 2008, the defendants, United States
Department of Justice, Federal Bureau of Prisons, and Joe Driver,
at that time the Warden of USP-Hazelton (jointly "BOP"), filed a
motion to dismiss the petition.  On May 21, 2008, Pinkney filed a
motion for summary judgment, followed by a renewed motion for
summary judgment on June 16, 2008.  The Court referred this matter
to United States Magistrate Judge John S. Kaull for initial
screening and a report and recommendation ("R&R")in accordance with
Local Rule of Prisoner Litigation 83.09.

<u>ORDER ADOPTING REPORT AND RECOMMENDATION</u>

On August 22, 2008, Magistrate Judge Kaull issued an R&R recommending that the Court **GRANT** the BOP's motion to dismiss. He also recommended that Pinkney's motion for summary judgment and renewed motion for summary judgment be **DENIED**, and that Pinkney's § 2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE.** On September 8, 2008, Pinkney timely filed objections to the R&R, which this Court now reviews <u>de novo</u>. <u>See</u> 28 U.S.C. § 636(b)(1).

## II. Factual Background

In Pinkney's § 2241 petition, he alleges that on November 1, 2006, while an inmate at USP-Hazelton, he met with his counselor in his unit manager's office to discuss an informal administrative remedy that he had filed against the counselor. Pinkney claims the counselor became upset when the two were unable to resolve the issue. After Pinkney was asked to leave the office, he avers that his counselor began to antagonize him about a CD ROM the counselor said had been sent from Pinkney's attorney. At that point, Pinkney alleges his counselor said to him, "You mother f***er always playing children games." Pinkney claims he responded, "You don't have the CD and f**k you too. And who are you talking to!" Pinkney additionally alleges that two individuals were standing outside the office during this altercation, but that they walked away when his unit manager exited.

<u>ORDER ADOPTING REPORT AND RECOMMENDATION</u>

An investigation ensued, during which the investigator determined the report to be factually accurate. <u>See</u> Resp't. Ex. 1, Att. B, Part III. After the investigation, the charges were referred to a Unit Disciplinary Committee ("UDC"). On November 6, 2006, the UDC conducted a hearing on the incident report, at which Pinkney admitted that the report was true. <u>Id.</u> at Part II. As a result of his admission, and the UDC's finding that the report was accurate, Pinkney lost his telephone privileges for 60 days. <u>Id.</u> The record from that hearing indicates that Pinkney did not seek to call witnesses at that time. <u>Id.</u>

In his § 2241 petition, however, Pinkney asserts that his counselor filed an incident report as a retaliatory measure because he would not drop his administrative remedy against the counselor. He also asserts that his rights were violated because he was not permitted to call witnesses to testify on his behalf at the UDC hearing. He further alleges that when he attempted to appeal the UDC findings in the BOP's administrative remedy process, he did not receive a response from the Warden, and that the Warden's failure to respond prevented him from exhausting his administrative remedies. For these reasons, Pinkney asserts that the BOP has violated his due process rights and his constitutionally protected liberty interests.

### III. Standard of Review

The Court reviews <u>de novo</u> any parts of the R&R to which a specific objection is made, 28 U.S.C. § 636 (b) (1), and may adopt, without explanation, any of the magistrate judge's recommendations to which the petitioner does not object. <u>Camby v. Davis</u>, 718 F.2d 198, 199 (4th Cir. 1983). The failure to raise an objection sufficiently specific to focus the Court's attention on the factual and legal issues that are truly in dispute waives any appellate review. <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003).

### IV. Analysis

In the R&R, Magistrate Judge Kaull concluded that Pinkney does not have a cognizable liberty interest in the loss of telephone privileges, and thus that he was not deprived of due process of law by being prevented from calling witnesses at his UDC hearing.

Pinkney objects to the R&R on three grounds. He first argues that he was, in fact, denied due process and the right to a fair trial by not being permitted to present witnesses at his UDC hearing. Next, Pinkney asserts that he has a liberty interest at stake in his future parole eligibility. Finally, he claims that he was not allowed to exhaust his administrative remedies, which denied him access to the courts.

ORDER ADOPTING REPORT AND RECOMMENDATION

A.    **Right to Call Witnesses at UDC Hearing**

First, Pinkney asserts that the BOP violated his due process
rights because he was not allowed to call witnesses at his UDC
hearing.  He cites to Wolff v. McDonnell, 418 U.S. 539, 566 (1974),
to argue that prisoners should be permitted to have witnesses
testify even at UDC hearings if it will not be unduly hazardous to
institutional safety or correctional goals.

In Wolff, the United States Supreme Court distinguished
between the need for procedural safeguards when an inmate is facing
loss of good-time credits versus parole revocation.  The Supreme
Court suggested that parole revocation constitutes a more serious
impact on a prisoner's liberty interest than a loss of good-time
credits (which has a more speculative and less immediate impact on
a prisoner's liberty interest), thus necessitating a stronger
procedural safety net.  See Wolff, 418 U.S. at 562.  Ultimately,
the Wolff Court vested prison authorities with discretion over
whether to allow prisoners to call witnesses, depending on the
seriousness of the applicable sanctions.  See Wolff, 418 U.S. at
566.

In the R&R, Magistrate Judge Kaull analogizes the dichotomy
between parole revocation and loss of good-time credits in Wolff to
the distinction in this case between UDC hearings and hearings

5

before a Disciplinary Hearing Officer ("DHO"). DHO hearings involve more serious violations carrying more serious sanctions, and thus additional procedural safeguards apply, including allowing prisoners to call witnesses. See 28 C.F.R. § 541.17.

In Wolff, the Court found that the requisite level of procedural safeguards for the loss of good-time credits was lower than the level of safeguards needed when parole revocation is at stake. Here, Pinkney faced a 60-day loss of telephone privileges, an even less severe sanction then the loss of good-time credits. See Wolff, 418 U.S. at 572, n. 19. Therefore, Wolfe does not require the BOP to provide the same level of procedural due process protections for the loss of minor privileges as is required for more significant losses of liberty.

While Wolff does indicate that prisoners should be allowed to call witnesses when doing so will not create undue hazards or impede institutional safety goals, the Court cautions that this must be balanced against the institutional needs of the prison. Id. at 566. Prison officials have the discretion to refuse to call witnesses, should that create a risk of reprisal or undermine authority. Id. at 566. Therefore, Pinkney's parsed depiction of Wolff is not an accurate portrayal of its holding, and Magistrate Judge Kaull properly interpreted the Wolff decision.

6

Moreover, the BOP rules and regulations governing inmate discipline specifically address when an inmate has the right to call witnesses at administrative hearings. See 28 C.F.R. § 541.10, et seq. Pursuant to 28 C.F.R § 541.15, which governs the procedures for UDC hearings, an inmate is entitled to testify and present documentary evidence, but not to call witnesses. Under § 541.15(h), UDCs may, after conducting a hearing, issue sanctions for minor violations. If the charges leveled against the inmate carry serious sanctions, however, the UDC must refer the alleged violation to a DHO. Section 541.15(h) also provides that the sanction of "loss of privileges" is a minor sanction which may be issued by the UDC without referral to the DHO. See also 28 C.F.R. § 541.13 (list of sanctions).

In this case, as a result of UDC's finding of a violation, Pinkney lost his telephone privileges for sixty days, which is considered a "minor sanction" pursuant to 28 C.F.R. § 541.15(h). Accordingly, Pinkney had no "right" to call witnesses to testify under the rules governing UDC hearings. Magistrate Judge Kaull, therefore, correctly concluded that Pinkney's rights were not violated as a result of his not being able to call witnesses at that hearing.

B.    **Liberty Interest**

In his R&R, Magistrate Judge Kaull properly determined that Pinkney does not have a liberty interest in the loss of telephone privileges, and thus his liberty interests were not violated by a lack of procedural due process protections.  In his objections, Pinkney argues that his true liberty interest lies not in his loss of telephone privileges, but in the potential effect it may have on his future parole prospects.

Pinkney, who was sentenced by the Superior Court for the District of Columbia to life with the possibility of parole, argues that any disciplinary report may negatively affect his parole eligibility date.  He asserts that any institutional infraction, no matter how small, can be considered in determining his parole eligibility date, and thus affects his liberty interest.  He provides a parole point assessment grid for adult offenders from the District of Columbia to support this argument.

Pinkney asserted this argument before Magistrate Judge Kaull as well, who correctly characterized Pinkney's efforts to identify a liberty interest in future parole prospects as too speculative. See Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir. 1991) ("fear or hope about a future discretionary decision is too speculative" to create a liberty interest); see also Greenholtz v. Inmates of

8

Nebraska Penal and Correctional Complex, 422 U.S. 1, 7 (1979)(there is no liberty interest in parole). Pinkney is not eligible for parole until 2019, and this attenuated eligibility date, coupled with the speculative nature of his argument, make this objection baseless.

**C.    Exhaustion of Administrative Remedies**

Finally, Pinkney objects that his right to access the courts and his right to due process were violated because Warden Joe Driver failed to respond to his grievance. He contends that Driver's failure to respond means that he did not, in fact, exhaust his administrative remedies prior to filing this case. He argues, therefore, that "the Magistrate Judge along with the government are insinuating that inmate[s] or petitioner doesn't have to 'exhaust' institutional grievance procedure before proceeding in federal court."

Generally, federal prisoners are required to exhaust administrative remedies before filing a § 2241 habeas corpus petition. Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir. 1981). However, exhaustion requirements in habeas corpus actions arising under § 2241 are judicially imposed, Martinez v. Roberts, 804 F.2d 570 (9th Cir. 1996), giving the Court discretion to waive that requirement.

Here, Pinkney's assertion that he was denied access to the courts is undermined by the fact that the case is now before this Court.  In addition, the BOP disputes Pinkney's allegation that Driver failed to respond, and asserts that Pinkney has, in fact, exhausted his administrative remedies.  As a result, the Magistrate Judge reviewed Pinkney's allegations on their merits.  <u>See</u> Rspt's Memorandum (dkt. 16) at 6.  Accordingly, Pinkney has not been denied access to the Court, nor has he been denied due process in the adjudication of these issues.  Thus, because he has suffered no prejudice as a result of the alleged failure by Driver to respond to his grievance, the Court finds that this objection is moot.

## V. Conclusion

For these reasons, the Court **ADOPTS** the R&R in its entirety (dkt. no. 23), **GRANTS** BOP's motion to dismiss, or in the alternative, motion for summary judgment (dkt. no. 15), **DENIES** Pinkney's motion for summary judgment and renewed motion for summary judgment (dkt. nos. 20 & 22), and **DISMISSES WITH PREJUDICE** Pinkney's § 2241 petition.

It is so **ORDERED**.

PINKNEY V. DOJ, ET AL.                                    1:07CV132

ORDER ADOPTING REPORT AND RECOMMENDATION

The Court directs the Clerk to transmit copies of this Order to counsel of record and to the pro se petitioner, by certified mail, return receipt requested.

DATED: February 17, 2009.


                              /s/ Irene M. Keeley
                              IRENE M. KEELEY
                              UNITED STATES DISTRICT JUDGE